UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ARMANDO GARCIA, | No. CV 05-7092-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 5, 2006, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on January 10 and January 18, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 3, 2006, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on July 11, 1971. [Administrative Record ("AR") at 111.]  He has a twelfth grade education, and previous work experience that includes heavy manual labor jobs. [AR at 19, 130, 135, 138-41.]

On August 25, 2000, plaintiff protectively filed an application for Supplemental Security Income payments, alleging disability due to severe scoliosis pain, chronic sharp spasms, anxiety disorders, numbness of the legs, arms and stomach, tremors, hypertension, and severe myalgia. [AR at 111-13, 129.] He claimed he has been unable to work since March 1, 1994. [AR at 111, 129.]  The application proceeded to the hearing level and was denied by a decision issued on August 11, 2003. [AR at 46-53.]  The Appeals Council vacated that decision and remanded the matter for further consideration. [AR at 15, 105-07.]  A new hearing was held before an Administrative Law Judge ("ALJ") on April 27, 2005, at which time plaintiff did not appear. However, plaintiff's counsel appeared, the ALJ determined that plaintiff is a "non-essential witness," and counsel had no objection to that designation. [AR at 15, 1388-90.]  On May 23, 2005, the ALJ found that plaintiff suffers from a severe impairment. [AR at 16.]  The ALJ further found that plaintiff has the residual functional capacity[1] to perform medium work,[2] and that while he cannot perform his past relevant work, a significant number of jobs exist that plaintiff can perform. [AR at 18.]  For this reason, the ALJ concluded that plaintiff is not under a disability, and

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In particular, the ALJ found that plaintiff "is limited to only 'occasional' climbing, balancing, stooping, crawling and crouching as that term is also defined by the regulations. [Plaintiff] has nonexertional mental limitations further limiting his medium occupational base to jobs involving the performance of simple, unskilled work and little contact with others." [AR at 18.]

is not eligible for benefits. [AR at 15-20.][3]  On July 29, 2005, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's case. [AR at 5-7.]

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is

---

[3] Plaintiff filed a subsequent application for Supplemental Security Income payments on December 22, 2003, which was denied by the state agency, and was then escalated to the hearing level and ruled upon in conjunction with the instant case. [AR at 15.]

3

expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/
/

B. **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 16.] At step two, the ALJ concluded that plaintiff's impairments -- cervical and lumbar degenerative disc disease, and anxiety and depressive disorders -- are severe. [Id.] The ALJ found, however, that the impairments do not meet or equal any impairments in the Listing (step three). [Id.] At step four, the ALJ concluded that plaintiff is not able to perform his past relevant work, which involved heavy manual labor. [AR at 18.] At step five of the sequential analysis, the ALJ determined that plaintiff can perform jobs that exist in significant numbers in the economy, and that he is thus not disabled. [AR at 18.]

## V.

## THE ALJ'S DECISION

On March 25, 2000, plaintiff was examined by Dr. Marat Pushin, who performed a comprehensive psychiatric evaluation. Dr. Pushin diagnosed plaintiff with panic disorder with agoraphobia, depressive order, not otherwise specified, and assessed a Global Assessment of Functioning ("GAF") score of 50.[4] He concluded that plaintiff's ability to understand, remember, and carry out simple instructions is intact, his ability to deal with the public as well as co-workers and supervisors would be impaired, and his ability to maintain concentration and attention was intact during the interview and would be intact for at least two hour increments. [AR at 281-84.]

In his opinion, the ALJ indicates that plaintiff has been diagnosed with anxiety and depressive disorders resulting in moderate attention and concentration deficits, and an impaired ability to deal with co-workers, supervisors and the public. In so concluding, the ALJ specifically

---

[4] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. 2000) (hereinafter, "DSM IV"). A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM-IV, at 34.

1 referred to Dr. Pushin's report. [AR at 16.] The ALJ concluded that these restrictions "would significantly limit [plaintiff's] ability to perform job-related tasks requiring these functions." [AR at 16.]

Plaintiff contends that the ALJ did not properly consider the psychiatric medical evidence in assessing plaintiff's Residual Functional Capacity. Joint Stipulation ("Joint Stip.") at 4-5. In particular, plaintiff argues that since the ALJ relied solely on the opinion of Dr. Pushin to find plaintiff mentally limited, and offered no discussion of any other psychiatric opinion, he adopted the opinion of Dr. Pushin. Joint Stip. at 7. In doing so, plaintiff asserts that Dr. Pushin's finding that plaintiff is capable of carrying out only simple instructions was ignored by the ALJ and not included in the Residual Functional Capacity assessment, and that the ALJ did not offer any reason for not including this limitation. Joint Stip. at 6.

This part of plaintiff's argument fails, as the hypothetical provided to the vocational expert[5] specifically contained the mental limitations found by Dr. Pushin, including a limitation to jobs involving simple instructions and little contact with others. [AR at 1346-47, 1381-82.] Including these limitations in the hypothetical, as they were based on substantial evidence, was proper. The vocational expert responded that an individual with these limitations could perform the occupation of small parts assembler, found at No. 706.684-022 of the Dictionary of Occupational Titles ("DOT"); the ALJ adopted this finding. [AR at 18, 1347, 1382.] Thus, plaintiff has demonstrated no harm in the ALJ not including the simple instructions limitation in the RFC assessment.

Plaintiff next argues that an individual limited to simple instructions cannot perform the occupation of small parts assembler. Joint Stip. at 8. The Court concludes that remand is required to resolve this issue. The occupation of small parts assembler requires a reasoning level of two,[6]

---

[5] The hypothetical was provided at hearings held on May 22, 2002, and July 16, 2003. [AR at 1304, 1351.]

[6] Every job description in the Dictionary of Occupational Titles contains both a General Educational Development ("GED") component and a Specific Vocational Preparation ("SVP") component. See DOT Appendix C. A job's specific vocational preparation time is the amount of time it generally takes to learn the job. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). On the other hand, the GED "embraces those aspects of education (formal and informal) which are

6

which is defined as the need to "[a]pply commonsense understanding to carry out **detailed** but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." See DOT No. 706.684-022 (emphasis added). This reasoning ability appears to be greater than plaintiff's ability to perform **simple** instructions. A reasoning level of one, on the other hand, seems to be more suitable for an individual limited to simple instructions. For a reasoning level one position, the worker must be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." See DOT Appendix C. Neither the ALJ nor the vocational expert explained how an individual who is limited to simple instructions can perform the identified occupation.

Accordingly, there is a conflict between the DOT and the testimony of the vocational expert, and there was no explanation for this deviation from the DOT. As a result, the ALJ did not resolve the conflict in the evidence. See SSR 00-4p (the ALJ has an affirmative duty to inquire whether there are any possible conflicts between the vocational expert's testimony and the DOT, and, if so, to "obtain a reasonable explanation for any conflicts."); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation"); see also Johnson v. Shalala, 60 F.3d 1428, 1434-1435 (9th Cir. 1995); Light v. Social Security Administration, 119 F.3d 789, 793-94 (9th Cir. 1997). The ALJ did not ask any questions concerning any conflicts and did not get any reasonable explanation for the apparent conflict.

Defendant argues that several district and appellate courts, including the Central District of California, have previously rejected plaintiff's contention that a reasoning level of two precludes unskilled work. Plaintiff contends that cases cited by defendant deal with a limitation to simple, repetitive **tasks**, which does not preclude reasoning level two occupations (see, e.g., Hackett v.

---

required of the worker for satisfactory job performance." See DOT Appendix C. The GED component is comprised of three elements -- reasoning development, mathematical development, and language development -- which are rated on a six-point scale ranging from level 1 (generally the least difficult) to level 6 (the most difficult or complex). Id.

Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005); Meissl v. Barnhart, 403 F.Supp.2d 981, 984 (C.D.Cal. 2005)), but do not deal with a limitation to following simple **instructions**.

Plaintiff appears to be correct. For example, Hackett involved an RFC that included the attention, concentration, persistence and pace levels required for simple and routine work tasks, which the court concluded seemed inconsistent with level three reasoning, but "more consistent" with level two reasoning. The RFC did not mention the claimant's ability, or lack thereof, to follow simple instructions, and whether that limitation is consistent with level two reasoning.

Meissl also involved a limitation to "simple tasks." The court there concluded that jobs with a reasoning level of two would be "consonant with a limitation to simple, repetitive mental tasks." Id. at 982. Although the Court found that "[s]omeone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above" reasoning level one (id. at 984), no distinction was made by the court between performing simple tasks and following simple instructions.

In contrast, Lucy v. Chater, 113 F.3d 905 (8th Cir. 1997), specifically involved a record that established -- as in the present case -- an intellectual functioning that did not prevent the claimant from following simple instructions. The defendant argued that vocational expert testimony was not needed as the examining physician determined that the claimant could follow simple directions and thus perform the full range of sedentary work. Noting that many unskilled sedentary jobs require more than the mental capacity to follow simple instructions, and that reasoning level two jobs require the ability to understand and carry out detailed instructions, the Court rejected defendant's argument and found that the claimant's mental functioning had an impact on his ability to perform the full range of sedentary work. Id. at 908-09.[7]

Based on a review of the cited cases, the Court concludes that it is far from established that a limitation to simple work and a limitation to following simple instructions are identical. The lack

---

[7] The Court notes that even the Memorandum Opinion cited by defendant, Rodriguez v. Barnhart, CV 04-6104-AN (Joint Stip. at 16) involved a limitation to "simple work." The Court in that case in fact specifically remarked that the ALJ did not make a finding that simple work requires simple work instructions, and a limitation to simple work instructions was not included in the RFC assessment.

1 of an explanation from the vocational expert and the ALJ as to how plaintiff here -- with his mental
2 limitation -- can perform a reasoning level two job requires remand.

## VI.

## **REMAND IS APPROPRIATE**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to specifically evaluate whether plaintiff's ability to perform work involving simple instructions precludes him from performing reasoning level two occupations, and if any occupations exist in significant numbers that plaintiff can perform.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 14, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE